**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

SEP 30 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

*IN RE*: ROBERT TAULER

No: 1:21-CV-00675-RP

<u>**DECLARATION OF MARK POE IN SUPPORT OF MOTION TO INTERVENE TO
UNSEAL THE ADMISSIONS COMMITTEE'S NEGATIVE RECOMMENDATION
LETTER RE: APPLICATION OF ROBERT TAULER**</u>

I, Mark Poe, declare as follows:

1.      I am a California-licensed attorney and acting as pro se counsel for myself in this

matter.  I am over the age of 18, and if called to testify at a hearing, would truthfully testify to the

following facts.

2.      Attached as **Exhibit A** hereto is a true and correct copy of the September 30, 2020

letter submitted by Robert Kinney to the Admissions Committee for the Western District of

Texas.

3.      I am the defendant in a case pending in the Plantation Key Division of the

Sixteenth Circuit Court of Florida captioned *Jowers v. Poe*.  As I have no connection to Florida

other than visiting that state once as a child on vacation and three times for work several years

ago, I have filed a motion to dismiss the complaint based in part on the absence of personal

jurisdiction.

4.      Kevin J. Cole, who assisted Mr. Tauler in gaining admission to this Court's bar, is

lead defense counsel for Tauler Smith in a case pending in the Southern District of California

1

captioned In re: Outlaw Laboratory. In that case, I represent three convenience stores who were subject to a scheme of mail fraud perpetrated by Tauler Smith.

5. A true and correct copy of the First Amended Complaint in the Florida action Jowers v. Poe is attached hereto as **Exhibit B**.

6. Mr. Jowers' counsel in the Florida case against me is called Zachary Zermay. Mr. Zermay and Mr. Cole hold themselves out as members in a "team" of lawyers doing business under a domain called www.kjclawyer.com. Immediately after I described this connection between Tauler, Cole, and Zermay in a filing in the Florida action, the website of www.kjclawyer.com began giving a 404 error and is no longer viewable. However, a true and correct screenshot of that website as printed on September 11, 2022 is attached as **Exhibit C** hereto.

7. The initial complaint in *Jowers v. Poe* was filed on July 8, 2022, and alleged that Mr. Kinney had copied and pasted from a document I filed in the Outlaw Laboratory litigation. After I filed a motion to dismiss in Florida, Jowers and Zermay filed their First Amended Complaint on August 20, 2022, now alleging that it was a brief filed in the California action *Tauler Smith LLP v. Valerio* that was the document that Mr. Kinney copied from.

8. In the Florida action, Mr. Zermay has taken the position that this Court's observation in its August 2, 2021 order that the Admissions Committee issued a negative recommendation "based on his failure to provide truthful answers to questions 15 (b) and (c) on the Application form and a supplemental question submitted by the Committee," was "'a purely gratuitous observation or remark'" by this Court that should be disregarded by the judge in Florida. A true and correct copy of that communication from Mr. Zermay is attached as **Exhibit D** hereto.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on September 25, 2022, at Honolulu, Hawaii.

Mark Poe

# Exhibit A

# ROBERT KINNEY, ATTORNEY AT LAW

824 W. 10th Street, Suite 202, Austin, TX 78701  |  512-636-1395  |  robert@kinneypc.com

September 30, 2020

US District Clerk's Office
ATTN: Admissions Clerk
501 W 5th Street, Suite 1100
Austin, TX 78701
Via Email to: Austin_Attorney_Admissions@txwd.uscourts.gov

RE: **Letter of Concern Regarding Application for Admission to the Court's Bar by Robert Tauler**

**Dear Admissions Clerk:**

I am a member in good standing of this Court's bar. This letter is to provide the Court's Admission Committee (the "**Committee**") with important information regarding Robert Tauler ("**Tauler**"), a current *pro hac vice* attorney before the Court who is trying to the join the Court's bar as a full member.

In short, Tauler should not be admitted. I am currently handling a case opposite Tauler, before Judge Pitman, *MWK Recruiting, Inc. vs. Evan P. Jowers*, Civil Action No.: 1:18-cv-00444-RP. Tauler's behavior in the few short months he has been on that case has been terrible. But the Committee does not need to take my word for Tauler's poor character. My co-counsel and I were so shocked by his seeming willingness to disregard every standard of attorney conduct and every local rule of the Court that we have investigated Tauler by looking at available public information about him. What we have found is that his behavioral issues in our case are nothing new. He has been sanctioned and warned by multiple judges for his behavior, including as recently as September 22, 2020, after his application for admission to this Court was submitted. He is also currently a defendant in a serious RICO case involving fraudulent misrepresentations by his firm on behalf of itself and its client which appears headed for trial. In that case, his behavior has seemingly been abhorrent. In sum, I believe the Committee may have a good basis to make Tauler an example of the sort of attorney this Court does not want as a member of its bar.

## Behavior Observed by the Undersigned

Tauler entered our case in June as counsel of record and his behavior since then has been abhorent. For example, he has consistently violated the Court's local rules regarding pretrial matters by scheduling depositions unilaterally. He has refused to even discuss a schedule for depositions, he has refused to answer discovery, and he has blocked our efforts in every possible way to handle the discovery in this case collaboratively. On the occasions where we have communicated by telephone with Tauler, he has often exhibited behavior that was

shocking – including screaming fits of rage followed by what can only be deliberate mis-recollections of what was said when writing emails and motions. I do not believe that anything short of forcing Tauler to associate local counsel under the Court's Local Rule AT-2 is likely to stop him from his bullying tactics, and we will be pursuing that remedy with Judge Pitman.

## Tauler's Behavior in Other Cases

We have investigated some of Tauler's other cases and have determined that his actions in our case are standard operating procedure for him. For example, in a recent motion seeking sanctions following some antics he displayed in deposition, Tauler was quoted as having said the following things:

| | |
|---|---|
| 13 14 15 | [To counsel:] And guess what? Time has a funny way of wrapping up on people. And I'm going to have you fully wrapped up like the little worm in my spider web by the end of this year. You mark my word, son. (178:16-19) |
| 16 17 | [To counsel:] And I must have hurt your feelings, because I know you're really sensitive. I know you have daddy issues. So, really, I'm going to be your daddy for the next two years. (192:12-15.) |
| 18 19 20 | Q: Let's look next at Exhibit 117.<br>A: Oh, yeah. This is where I say you're a fucking idiot, basically. Well, strike that. Basically, you're so dumb. (191:21-24.) |
| 21 22 | [To counsel:] You are going to get destroyed. (194:15-16.) |
| 23 24 | [To counsel:] He's laughing. He's giggling. He's playing with his hair. He's like a school girl. . . . You like to giggle when you're nervous, like a little school girl, don't you, Mark? (194:24-195:7) |
| 25 26 27 28 | [To counsel:] Mark, it's okay if you're scared. It's okay if you're scared. You had a really rotten year. You had the worst year imaginable. (195:20-23.)<br>(Poe Decl. Ex. A (excerpts of transcript).) |

See, *Motion for Sanctions, In re Outlaw Lab., LP Litig.*, Case No.: 18-cv-840-GPC-BGS (S.D. Cal. August 10, 2020), attached as **Exhibit A**. This motion is pending as of this date. A Houston-based attorney, Sean Reagan, submitted a declaration in connection with that case which describes in detail some of Tauler's antics. It is attached as **Exhibit B**. Among other things, Mr. Reagan noted, "Mr. Tauler's conduct during his deposition was one of the most shocking displays of unprofessional behavior by an attorney that I have seen in my 15-year career." *Id.*, at ¶4.

## Prior Court Sanctions and Fraud Claims Against Tauler

With regard to prior sanctions, our research indicates that Tauler owes the Committee "yes" answers and corresponding explanations to questions 15(b) and 17(b) of the application form. Further, since his application was (according to the Admission Clerk's office) filed September 16 and he was sanctioned September 22, he should have updated that form. The matters we have found in public records are as follows:

2

1. **Question 15(b) – "Have you ever been disbarred, suspended from practice, reprimanded, censured or otherwise disciplined as an attorney."**

We quickly located four cases in which Tauler has been sanctioned or warned about sanctions for his antics:

a. Tauler was sanctioned $2,500 by a federal judge (Hon. Roger T. Benitez) under Federal Rule of Civil Procedure 11 for a "failure to conduct a reasonable and competent inquiry" before filing, and associated assertions of "demonstrably false representations and arguments." See **Exhibit C**, *Order Imposing Sanctions, Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC,* No. 3:16-CV-02810-BEN-BGS, 2018 WL 4385368, at *7 (S.D. Cal. Sept. 14, 2018). In a subsequent order awarding fees against Tauler's client, Judge Benitez stated:

> "Also notable is [Tauler client's] failure to comply with the Court's September 14, 2018 Order in this case. Although the Court ordered [Tauler's clients], Mr. Tauler, and Tauler Smith LLP to pay their sanctions by October 31, 2018, and file a Notice with the Court that the sanctions were paid within three days of payment, as of the date of this Order, no notice has been filed. To say the least, [Tauler client's] *brazen litigation tactics* and utter disregard for this Court's own order suggest a lack of respect for the rule of law that should be deterred. Therefore, the Court finds [client's] behavior underscores the need for deterrence, a factor weighing in favor of finding its lawsuit to be an 'exceptional case.'"

See, **Exhibit D**, *Order Granting Motion for Attorneys' Fees, Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC,* No. 3:16-CV-02810-BEN-BGS, at *8-9 (S.D. Cal. Nov. 7, 2018)(emphasis added). Judge Benitez's Courtroom Deputy, G. Rivera, can be reached at this number: (619) 557-6422.

b. A California state court judge (Hon. Elaine Lu) recently sanctioned Tauler $1,060, stating that "the numerous procedural defect's in Plaintiff's Motion to Compel Further and Request for Sanctions demonstrate that it was not brought with substantial justification." *Tauler Smith, LLP v. Valerio et. al.,* Case Number 19-STLC-11426, Los Angeles, CA (September 22, 2020). See **Exhibit E**. Faced with this sanction, Tauler quickly dismissed the case prior to the hearing at which the final ruling was to be entered. The sanction still occurred, though, and is pending, and should have been disclosed. Judge Lu's chambers can be reached at (213) 633-0526.

c. Another federal judge (Hon. Michael R. Wilner) warned Tauler to "be mindful of Rule 11 standards" in a different case. *JST Distribution, LLC v. CNV.com, Inc.,* No. 17-CV-6264-PSG-MRWX, 2018 WL 6113092, at *8 (C.D. Cal. Mar. 7, 2018). Judge Wilner's courtroom deputy clerk, Veronica Piper, can be reached at (213) 894-0902.

d. The federal judge overseeing yet another case (Hon. Andre Birotte) said that he "tends to agree that 'by appearances' the RICO claim was added for an 'improper purpose.'" *Tauler Smith, LLP v. Valerio*, No. 20-CV-00458 AB (ASX), 2020 WL 1921789, at *5 (C.D. Cal. Mar. 6, 2020). Judge Birotte's courtroom deputy clerk, Carla Badirian, can be reached at (213) 894-2833.

2. **Question 17(b) – "Have you ever been charged with fraud, formally or otherwise, in any civil, criminal, bankruptcy, or administrative case or proceeding?"**

In a simple search, we found that Tauler has been charged at least twice with fraud in a civil action. One of the cases is still pending, and Tauler's firm is charged with running a "scheme to defraud" in that case. Here are the details:

a. Tauler's firm, Tauler Smith LLP, is currently a defendant in a RICO Act civil case pending before the U.S. District Court for the Southern District of California (Hon. Gonzalo P. Curiel). The original defendants in the action (Tauler's alleged victims) brought counterclaims alleging that Tauler and his client orchestrated a fraud and racketeering enterprise by pursuing frivolous claims. The Court noted in its recent order on Tauler's Motion for Summary Judgment, that there was sufficient evidence for a jury to find that Tauler Smith "knowingly engaged in fraudulent conduct alongside [its client] in the course of drafting and sending its demand letters." According to the court's order, Tauler Smith's "conduct of sending fraudulent demand letters to further [the Enterprise's] scheme, if true, amounts to mail fraud, which in turn forms the basis of the Enterprise's pattern of racketeering conduct." *See Order on Tauler Smith's Motion for Summary Judgment, In re Outlaw Lab., LP Litig.*, Case No.: 18-cv-840-GPC-BGS (S.D. Cal. September 18, 2020), attached as **Exhibit F**. Whether Tauler will be held liable for the claims remains to be seen, but at a minimum these serious charges should have been disclosed to the Committee in full. For a direct inquiry, Judge Curiel's chambers may be reached at this number: (619) 557-7667.

b. In another case, *Wesco Insurance Company v. Tauler Smith LLP*, Case No. 2:19-cv-08171 (C.D. Cal. 2019), Tauler's firm was accused of misrepresenting whether there were malpractice or other claims pending against them when they applied for professional liability insurance. This was, at the least, an informal charge of fraud in a civil proceeding, and thus disclosable to the Committee, but the insurance company simply sought to rescind the policy and did not charge Tauler with fraud explicitly. After surviving a motion to dismiss, that case was settled and dismissed on May 1, 2020. The court's order on Tauler's Motion to Dismiss dated January 6, 2020, is attached as **Exhibit G**.

It is evident from my experience and what we have found with minimal inquiry that Tauler's behavior is consistent, abhorrent, and not desired among members of the bar of this Court. I hope that the Committee finds this information helpful in its deliberations and will see fit to deny admission to this attorney. If you have any questions regarding this matter, do not hesitate to contact me on 512-636-1395.

Sincerely,

*Robert E. Kinney*

**Robert Kinney, Attorney at Law**

Attachments:

**Exhibit A –** Motion for Sanctions against Tauler for deposition misconduct, *In re Outlaw Lab., LP Litig.*, Case No.: 18-cv-840-GPC-BGS (S.D. Cal. August 10, 2020).

**Exhibit B –** Declaration of Sean Reagan, a Houston-based attorney, submitted in connection with the Motion for Sanctions referenced above (August 17, 2020).

**Exhibit C –** Order Imposing Sanctions against Tauler for "failure to conduct a reasonable and competent inquiry" before filing, and associated assertions of "demonstrably false representations and arguments." *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, No. 3:16-CV-02810-BEN-BGS, 2018 WL 4385368 (S.D. Cal. Sept. 14, 2018).

**Exhibit D –** Order Granting Motion for Attorney Fees, imposing fees in an "exceptional case," and noting Tauler's "brazen litigation tactics," *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, No. 3:16-CV-02810-BEN-BGS (S.D. Cal. Nov. 7, 2018).

**Exhibit E –** Tentative Ruling of Los Angeles County Superior Court Judge Elaine Lu, awarding sanctions against Tauler because his motion "was not brought with substantial justification." *Tauler Smith, LLP v. Valerio et. al.*, Case Number 19-STLC-11426 (September 22, 2020).

**Exhibit F –** Order on Tauler Smith's Motion for Summary Judgment allowing RICO claims based on fraud to go to trial, *In re Outlaw Lab., LP Litig.*, Case No.: 18-cv-840-GPC-BGS (S.D. Cal. September 18, 2020).

**Exhibit G –** Order denying Tauler Smith's Motion to Dismiss claims for rescission on a professional liability insurance policy, *Wesco Insurance Company v. Tauler Smith LLP*, Case No. 2:19-cv-08171 (C.D. Cal. January 6, 2020)

5

# Exhibit B

Filing # 155750398 E-Filed 08/20/2022 12:04:03 AM

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
IN AND FOR MONROE COUNTY, FLORIDA
KEY WEST DIVISION

EVAN JOWERS,                                    CASE №: 22-CA-000462-K

       Plaintiff,

v.

MARK POE,

       Defendant.

_____/

## FIRST AMENDED COMPLAINT

Plaintiff Evan Jowers brings this First Amended Complaint against Defendant Mark Poe and alleges as follows:

## THE PARTIES

1. Plaintiff is, and at all times relevant hereto was, a citizen of Florida.

2. Defendant[1] is, and at all times relevant hereto was, a citizen of the State of California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to section 26.012(2), Florida Statutes. The matter in controversy exceeds the sum or value of $30,000.00 exclusive of interest, costs, and attorney's fees.

---

[1] Defendant is a California licensed attorney and principal of the law firm Gaw | Poe LLP. Plaintiff has not named Gaw | Poe LLP as a defendant in this case because at no time material to this lawsuit was Defendant engaged in conduct that a reasonable lawyer, or any lawyer for that matter, would (conspiring with a party in a case in which he is not involved, to submit fraudulent information about an attorney, to prevent that attorney from representing a client).

4. This Court has personal jurisdiction over Defendant because this suit arises out of and relates to Defendant's tortious acts within the State of Florida. *See* § 48.193(1)(a)(2), Fla. Stat.

5. In addition to the facts alleged in paragraph 4 of this First Amended Complaint, at all material times, Defendant has "engaged in solicitation or service activities" within this state by way of his continued and uninterrupted representation of TrendSettah USA, Inc. ("TrendSettah") which is a citizen of the State of Florida. § 48.193(1)(A)(6), Fla. Stat. TrendSettah's nerve center and president were at all material times located in Florida. Furthermore, the United States Department of Justice made clear that TrendSettah was, at all material times, "authorized to transact business in Florida" and was run by a "Akrum Alrahib, 43, of Miami, Florida[.]" United States Attorney's Office for the Southern District of Florida, *California Tobacco Executive Pleads Guilty to Conspiracy to Evade Federal Excise Taxes on Dominican Cigars*, Sep. 24. 2021, https://www.justice.gov/usao-sdfl/pr/california-tobacco-executive-pleads-guilty-conspiracy-evade-federal-excise-taxes; *Florida Man Sentenced to 5 Years in Prison for Defrauding California of Over $10 Million in Tax Revenue*, U.S. Attorney's Office Eastern District of California, Jun. 23. 2022, https://www.justice.gov/usao-edca/pr/florida-man-sentenced-5-years-prison-defrauding-california-over-10-million-tax-revenue). Furthermore, Defendant is heavily involved in litigation concerning his clients TrendSettah and Mr. Alrahib in the Southern District of Florida, and in cases involving the application of Florida law. *See Trendsettah USA, Inc., et al., v. Swisher International, Inc.* (Case No.: 1:20-mc-21049-MGC) (S.D. Fla. 2021) ("Nearly 21 months ago, on March 9, 2020, Swisher served Alrahib with a document subpoena at the Miami

Federal Detention Center where he was and remains incarcerated. (ECF No. 1-3 at 4.) He refused to produce any responsive documents. (*See id.* at 5.) Instead, through his then-civil counsel, Gaw | Poe LLP, he asserted a bevy of boilerplate and meritless objections. (ECF No. 1-26.) Counsel then met-and-conferred with the attorneys at Gaw | Poe regarding those objections."); *see also Trendsettah USA, Inc., et al., v. Swisher International, Inc.,* (Case No. 8:14-CV-01664-JDS (DFMx)) (C.D. Cal. 2019) ("Because Florida law governs the parties' agreed fee-shifting provision, Trendsettah is further entitled to a 2.0 multiplier of its fees for this contingency case (*i.e.,* $11,125,134), even if in retrospect the Court determines that Trendsettah's "likelihood of success was approximately even at the outset." *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 834 (Fla. 1990). If the Court more accurately 'determines that success was unlikely at the outset of the case,' then Plaintiffs should receive up to a 2.5 multiplier (*i.e.,* $13,906.417.50). *Id.* Indeed, since the date of the Court's first ruling on Plaintiffs' entitlement to a multiplier, the Florida Supreme Court has endeavored to 'make clear' that in fee-shifting contingency cases under Florida law, 'there is not a "rare" and "exceptional" circumstances requirement before a contingency fee multiplier can be applied.' *Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1125 (Fla. 2017).").

6. Indeed, in addition to representing TrendSettah, Defendant served as counsel for clients in a least two other major cases in the State of Florida: *In Re Checking Account Overdraft Litigation* (Case No.: 1:09-MD-02036-JLK) (S.D. Fla.) and *New England Carpenters Health Benefits Fund, et al v. First Databank, Inc. et al.* (Case No.: 8:08-MC-00012) (M.D. Fla.).

7. Furthermore, for reasons stated in paragraphs 5 – 6 of this First Amended Complaint, Defendant engaged in substantial and not isolated activity

within this state by representing TrendSettah and his other clients. *See* §
48.193(2), Fla. Stat. Defendant engages in business in Florida because he
actively advertises to, and services clients like, Akrum Alrahib,
TrendSettah, and others.

8. Further, Defendant knowingly sent numerous communications into
Florida, received money from Florida, advertised his services in Florida,
represented Floridians, and represented clients before courts located in
Florida. Accordingly, Defendant plainly and purposefully availed himself
of the privileges of conducting activities within our State, thus invoking
the benefits and protections of this jurisdiction.

9. Moreover, at all material times, Defendant knew that Plaintiff was a
citizen of the State of Florida, knowingly directed his tortious conduct into
the State of Florida, knew that he was interfering business relationship in
Florida, and caused Plaintiff damages in the State of Florida by requiring
him to spend money which was located in Florida. To wit, at all material
times, Defendant's express aim was to reach into the State of Florida and
harm Plaintiff by way of his tortious conduct. Accordingly, this Court has
personal jurisdiction over him.

10. Venue for this action is proper in the Sixteenth Judicial Circuit of
Florida pursuant to section 47.011, Florida Statutes, because Defendant is
not a resident of the State of Florida.

## FACTS

11. Plaintiff was engaged in a complex civil lawsuit involving his former
employer (the "Litigation"). During the Litigation, Plaintiff retained
Robert Tauler, Esq. ("Attorney") who is a founding partner of the
nationally recognized law firm Tauler Smith LLP. Attorney specializes in
high-stakes commercial litigation and represents both plaintiffs and

defendants in a variety of areas, including: false advertising, business disputes, and unfair competition.

12.   Plaintiff and Attorney entered a business relationship whereby Plaintiff agreed to pay Attorney to represent him in the high stakes and complex Litigation.

13.   The underlying Litigation was complex and required a lawyer with highly institutionalized knowledge. Without Attorney's services, Plaintiff would be significantly harmed because he would not have a lawyer who had deep working knowledge about the Litigation.

14.   Attorney proceeded *pro hac vice* under the license of an attorney at the multinational law firm DLA Piper who was licensed in the court that the Litigation occurred.

15.   DLA Piper and the lawyer that sponsored Attorney's *pro hac vice* admission withdrew from the Litigation—which necessitated Attorney to get the rubber stamp approval of an admissions committee to become a member of the court's bar.

16.   Defendant knew about the business relationship described in paragraph 12 because he read articles published about the Litigation, and because Defendant follows Attorney's public court filings out of a venomous spite he holds against Attorney.

17.   Seizing this opportunity to harm Plaintiff and Attorney, commencing on or about August 14, 2020, Defendant commenced his smear campaign to derail Attorney's representation of Plaintiff and the business relationship described in paragraph 12.

18.   To wit, Defendant collaborated with Plaintiff's former employer, Robert Kinney ("Kinney"), to feed the admissions committee false information, misleading statements, and scandalous lies about Attorney to prevent him

from being admitted to the court's bar thereby leaving Plaintiff twisting in the wind without adequate representation in the highly contentious and complex Litigation.

19.    Kinney was committed to preventing Attorney from becoming a member of the court's bar because it would give him a competitive advantage in the Litigation—and Defendant intentionally acted without regard to how his actions would impact Plaintiff because he was obsessed with hurting Attorney.

20.    Defendant's smear campaign continued through at least February 16, 2021.

21.    On February 16, 2021, as a direct and proximate result of the illicit collaboration described *supra*, the admissions committee recommended that the court reject Attorney's application to be a member of the bar of the court.

22.    As a result of the smear campaign described *supra*, Plaintiff was forced to retain the services of another lawyer to secure Attorney's admission to the court's bar.

23.    To wit, Plaintiff spent a significant amount of money to appeal the admissions committee's recommendation to the chief judge of the court.

24.    After obtaining the admissions committee's file, it was uncovered that on September 30, 2020, Kinney submitted false information, misleading statements, and scandalous lies about Attorney at the behest of Defendant (the "Kinney Letter").

25.    Defendant fed Kinney the false information, misleading statements, and scandalous lies that were written in the Kinney Letter.

26.    This illicit collaboration is evidenced by the fact that Kinney copied and pasted false information, misleading statements, and scandalous lies from

6

a brief submitted in another proceeding (the "Valerio Brief"). The information that Defendant provided to Kinney included—but is not necessarily limited to—the information that Kinney copied and pasted described below.

27.    Defendant had access to the Valerio Brief because he was counsel for the defendant in that proceeding.

28.    Documents in the proceeding that the Valerio Brief was filed in are not publicly available because the proceeding was filed in the limited jurisdiction[2] of the courts of California.

29.    The Valerio Brief was filed by Gaw | Poe LLP on or about August 14, 2020, to oppose a motion to compel brought by Attorney.

30.    Kinney would not have had a copy of the Valerio Brief but for Defendant's interference.

31.    Kinney copied and pasted language from the Valerio Brief into an opposition to a motion to compel in the Litigation. He then used that same language in the Kinney Letter to smear Attorney before the admissions committee.

32.    Screenshots of language that was copied from the Valerio Brief into Kinney's opposition to the motion to compel and the Kinney Letter are below:

_____

[2] Which means that they are not publicly available from online services.

22        Simply put, Plaintiff's motion is frivolous. But, one should expect nothing less from

23    Plaintiff and its counsel Robert Tauler given that they were previously sanctioned $2,500 by a

24    federal judge under Federal Rule of Civil Procedure 11 for a "failure to conduct a reasonable and

25    competent inquiry" before filing, and their associated assertions of "demonstrably false

26    representations and arguments." *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC,*

27    No. 3:16-CV-02810-BEN-BGS, 2018 WL 4385368, at *7 (S.D. Cal. Sept. 14, 2018). And a

28    second federal judge warned them to "be mindful of Rule 11 standards" in a different case, *JST*

1

Defendants' Opposition to Plaintiff's Motion to Compel Depositions

1    *Distribution, LLC v. CNV.com, Inc.,* No. 17-CV-6264-PSG-MRWX, 2018 WL 6113092, at *8

2    (C.D. Cal. Mar. 7, 2018). Plus, the federal judge that oversaw *this* case prior to its remand back

3    to state court noted, when dismissing Plaintiff's frivolous RICO claim against Defendants with

4    prejudice, that it "tends to agree that 'by appearances' the RICO claim was added for an

5    'improper purpose.'" (Order Granting Defendants' Motion for Judgment on the Pleadings dated

6    March 6, 2020 at 10.)

## Valerio Brief at 1 – 2.

It not clear whether Tauler would be eligible for full admission to the Western District of Texas. Tauler has been previously sanctioned $2,500 by a federal judge under Federal Rule of Civil Procedure 11 for a "failure to conduct a reasonable and competent inquiry" before filing, and associated assertions of "demonstrably false representations and arguments." *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC,* No. 3:16-CV-02810-BEN-BGS, 2018 WL 4385368, at *7 (S.D. Cal. Sept. 14, 2018). Exhibit 5. A second federal judge warned him to "be mindful of Rule 11 standards" in a different case. *JST Distribution, LLC v. CNV.com, Inc.,* No. 17-CV-6264-PSG-MRWX, 2018 WL 6113092, at *8 (C.D. Cal. Mar. 7, 2018). Exhibit 6. The federal judge overseeing another case, when dismissing Tauler's firm's frivolous RICO counterclaim against a former bookkeeper with prejudice, said that he "tends to agree that 'by appearances' the RICO claim

RESPONSE TO JOWERS'S SECOND MOTION TO COMPEL       **Page 6**

Case 1:18-cv-00444-RP   Document 204   Filed 09/08/20   Page 7 of 8

was added for an 'improper purpose.'" *Tauler Smith, LLP v. Valerio,* No. 20-CV-00458 AB (ASX), 2020 WL 1921789, at *5 (C.D. Cal. Mar. 6, 2020). Exhibit 7.

Kinney Oppo. to Mot. to Dismiss at 6 – 7.

34.   Kinney referred that language in the Kinney Letter.

35.   Defendant gave Kinney the Valerio Brief before Kinney submitted the Kinney Letter to the admissions committee for the express purpose of feeding the admissions committee false and misleading information in order to derail Attorney's representation of Plaintiff in the Litigation.

36.   Indeed, it is clear that both Kinney and Defendant were illicitly collaborating with respect to the Litigation because they admittedly communicated as early as August 26, 2020.

37.   Defendant had Kinney sign a declaration (under oath) dated June 1, 2021, stating that Kinney reached out to Defendant in August of 2020 because Kinney liked Defendant's "demeanor" in an online video.

> 3   6.   I was impressed by Mark Poe's demeanor in that video and, after
> 4   reading some of the filings, I decided to reach out to Mr. Poe, which I did by
> 5   telephone on August 26, 2020. I followed up with an email on the same date. At
> 6   some point on that day or shortly thereafter, I spoke to Mr. Poe for the first time.
> 7   Mr. Poe never contacted me; I contacted him.

38.   Despite this, at his February 25, 2021, deposition, Kinney testified (under oath) that he didn't recall if he reached out to Defendant or if it was the other way around:

```
8      Q    Mr. Kinney, how do you know Mark Poe?          07:05:01
9      A    What do you mean by "know"?                    07:05:07
10     Q    When did you first meet Mark Poe?              07:05:10
11     A    I met Mark Poe by telephone at some point      07:05:15
12   last summer.                                          07:05:21
13     Q    And did you -- did he reach out to you or      07:05:23
14   you reach out to him?                                 07:05:28
15     A    I don't recall.                                07:05:29
16     Q    You don't remember if it was just, like, a     07:05:33
17   phone call out of the blue or if it was someone you   07:05:35
18   found and contacted?                                  07:05:37
19     A    No, I don't remember.                          07:05:39
20     Q    You don't remember?                            07:05:40
21     A    No.                                            07:05:41
```

39.   Kinney's attorney then objected on work product grounds. However, Kinney admitted that Defendant was not working on the Litigation (demonstrating that there is no litigation privilege to protect Defendant's tortious conduct).

```
22     Q    Mr. Kinney, do you -- is -- is Mark Poe an     07:07:34
23   attorney who has been engaged to work for you on this 07:07:40
24   case?                                                 07:07:43
25     A    No.                                            07:07:47
```

40.   When asked if Defendant provided Kinney with any information about Attorney, his lawyer instructed him not to answer.

```
2        Q    Did Mark provide you materials about me,    07:08:40
3    Mr. Kinney, at any point?                            07:08:45
4        MR. MORT:  Again, I'm going to object on         07:08:49
5    the grounds of work-product communication --         07:08:50
6    work-product privilege and attorney-client           07:08:51
7    communication.                                       07:08:53
8    By MR. TAULER:                                        07:08:55
9        Q    Are you taking your attorney's advice,      07:08:55
10   Robert?                                               07:09:00
11       A    Yes.                                         07:09:03
```

41.   On top of all of this, Kinney lied under oath when he denied that he submitted anything to the admissions committee during a sworn deposition. To wit, he answered:

```
1        A    I did not submit anything to an admissions
2    committee.  I do not know who is on the admissions
3    committee, and I did not address anything to an
4    admissions committee.
```

42.   Clearly, Defendant and Kinney did not think that they would get caught. For reasons stated *supra*, Defendant and Kinney illicitly collaborated to derail Attorney's representation of Plaintiff and the business relationship described in paragraph 12. What Defendant did was outrageous, bizarre, and wrong because it needlessly hurt Plaintiff and his relationship with his attorney.

43.   After spending a significant amount of money on another lawyer to get Attorney admitted to the court's bar, on November 1, 2021, Attorney was admitted.

44.   But for Defendant's false light, misleading statements, and defamatory lies, Attorney would not have been denied a recommendation that he be admitted to the bar of the court that the Litigation was occurring in, and

Plaintiff would not have had to expend significant monetary resources to get Attorney—who was already representing Plaintiff *pro hac vice*—to become a full member of the bar of the court that the Litigation occurred in.

### COUNT I
### TORTIOUS INTERFERENCE

45.   Plaintiff incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

46.   Under Florida law, to state a claim for tortious interference with contract the claimant must plead four elements: (1) the existence of a business relationship under which plaintiff has legal rights, not necessarily evidenced by an enforceable contract; (2) proof of defendant's knowledge; (3) intentional and unjustified interference with relationship by defendant; and (4) damage to plaintiff as a result of interference.

47.   As to the first prong, Plaintiff had legal rights as a result of his business relationship with Attorney.

48.   As to the second prong, Defendant knew about the legal relationship between Plaintiff and Attorney due to media exposure to the Litigation and because Defendant follows Attorney's public court filings out of a venomous spite he holds against Attorney.

49.   As to the third prong, Defendant intentionally and unjustifiably interfered with the business relationship via his smear campaign and illicit collaboration described *supra*.

50.   As to the fourth prong, as a direct and proximate result of Defendant's smear campaign and illicit collaboration described *supra*, the admissions committee recommended that the court reject Attorney's application to be a member of the bar of the court, and Plaintiff had to spend a significant

sum of money on another lawyer to get Attorney admitted to the court's bar so Plaintiff and Attorney could proceed with their business relationship.

**COUNT II**
**ABUSE OF PROCESS**

51.   Plaintiff incorporates by reference every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

52.   To state a claim for abuse of process under Florida law, a claimant must allege: (1) willful and intentional misuse of process for some wrongful or unlawful object, or collateral purpose, and (2) that the act or acts constituting the misuse occurred after the process issued.

53.   As to the first prong, Defendant willfully and intentionally misused the Litigation and Attorney's application to the admissions committee to become a member of the court's bar to harm Plaintiff financially and to derail Attorney's representation of Plaintiff.

54.   As to the second prong, these actions took place after Plaintiff was a defendant in the Litigation and after Attorney applied to be a member of the court's bar with its admissions committee.

55.   As a direct and proximate result of Defendant's smear campaign and illicit collaboration described *supra*, the admissions committee recommended that the court reject Attorney's application to be a member of the bar of the court, and Plaintiff had to spend a significant sum of money on another lawyer to get Attorney admitted to the court's bar so Plaintiff and Attorney could proceed with their business relationship.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

    a.    That the Court award Plaintiff a judgment against Defendant in such sums as shall be determined to fully and fairly compensate Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of Defendants' acts and omissions. These include, but are not limited to, physical pain and suffering, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress and future emotional distress; pharmaceutical expenses, both past and future; wage loss; and other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances;

    b.    Injunctive relief; and

    c.    Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the communications or transmittal of communications alleged herein.

14

DATED:  August 19, 2022       Respectfully Submitted,

**ZERMAY LAW, P.A.**

*Zachary Z. Zermay*

Zachary Z. Zermay, Esq.
Florida Bar №: 1002905
203 Labelle Avenue
Fort Myers, Florida 33905
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 19, 2022, I electronically filed the foregoing document with the Clerk of the Court using Florida Court's E-Filing Portal and all counsel of record have been served via transmission of Notice of Electronic Filing generated by Florida Court E-Filing Portal or in some other authorized manner.

*Zachary Z. Zermay*

Zachary Z. Zermay, Esq.

15

# Exhibit C

# California Professional Injury Lawyers Team

## Claims over $100 million

contact us

   

---

**lawyer team**

---





**Kevin Cole**

Kevin J. Cole

**Wang Chen**

Chen Wang

**Chris Ramos**

Christopher Ramos

**Calvin Love**

Calvin F. Love

   



**Zach Zemei**

Zachary Zermay

**Daniel Hilf**

Daniel Hilf

**Sufin Hilf**

Sufen Hilf

**Robert Dilling**

Robert Devling



**Sui Yuan**

Sunny Sui

« 1 2 »

contact us

Name

Mail

message

WeChat

submit Form

## contact us

24-hour service hotline: 818-928-5899
Email: backoffice@kjclawgroup.com
WeChat: kjclawgroup



the public

## company address

Offices in Los Angeles, CA; Beverly Hills; Pasadena; Detroit, MI
We are proficient in Mandarin, Cantonese, Shanghainese, English, Japanese
24/7 emergency contact information to solve emergency cases for you

Links

COPYRIGHT (©) 2022 California Kaicheng Law Firm All rights reserved Global Trade SEO .

# Exhibit D

## Mark Poe

| | |
|---|---|
| **From:** | zach@zermaylaw.com |
| **Sent:** | Tuesday, September 20, 2022 8:04 AM |
| **To:** | 'Mark Poe' |
| **Subject:** | RE: Jowers v. Poe; CMC/Motion Hearing date |

Good afternoon Mark,

I believe you were citing a scheduling order in that case. As you know, "a purely gratuitous observation or remark made in pronouncing an opinion and which concerns some rule, principle, or application of law not necessarily involved in the case or essential to its determination is obiter dictum, pure and simple." *Doherty v. Brown*, 14 So. 3d 1266, 1267–68 (Fla. 1st DCA 2009). Clearly, Judge Pitman's Order of August 2, 2021 scheduling a "Video Conference on September 3, 2021" did not concern a rule, principle, or application of law involved in the case or essential to its determination—and therefore—therefore there is no finding that you can rely on. Let alone a conclusive one.

Further, this case also concerns "information that Defendant provided to Kinney [which] included—but [was] not necessarily limited to—the information in the Valerio Brief and the Valerio Order." This case is not limited to the Valerio Brief and Order.

Please confirm whether you will provide the requested dates/times or not so I can prepare a deposition notice or motion to compel. Thanks.

Sincerely,
Zachary Z. Zermay, Esq.
Zermay Law
Telephone: Fla. (239) 699-3107: Cal. (310) 752-9728
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com

**From:** Mark Poe <mpoe@gawpoe.com>
**Sent:** Tuesday, September 20, 2022 1:35 PM
**To:** zach@zermaylaw.com
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Hi Zach,

Thanks for not being shy and starting to email. I disagree with your analysis. As set forth in my motion, there are two reasons why your complaint is a sham: (1) your central allegation is contradicted by an order of the federal judge who oversaw Tauler's admissions process, and (2) the portion of the Valerio brief that Mr. Kinney excerpted in his letter did nothing beyond cite instances in which Tauler had been sanctioned/admonished, and court orders can't be "scandalous lies."

Do you see what I mean?  Since there's no question that I could answer in a deposition that would be relevant to either of the two reasons why your complaint is a sham, it just wouldn't be relevant to deciding that issue.  Maybe you and Rob can put your heads together, and figure out what steps to take next?

Thanks,
Mark

Mark Poe
Gaw | Poe LLP
www.gawpoe.com
Embarcadero 4, Suite 1400
San Francisco, CA 94111
(415) 766-7451


**From:** zach@zermaylaw.com <zach@zermaylaw.com>
**Sent:** Tuesday, September 20, 2022 7:18 AM
**To:** 'Mark Poe' <mpoe@gawpoe.com>
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Good afternoon Mark,

We need to get this deposition penciled in before the hearing (and after I have had the chance to review your discovery responses).

As you know, by filing the motion to strike the FAC as a sham, you intend to prove to the Court that it is "mere pretense set up in bad faith and without color of fact," and thus "plain fiction." *Reyes ex rel. Barcenas v. Roush*, 99 So. 3d 586, 590 (Fla. 2d DCA 2012). A "full evidentiary hearing is required [before ruling on a motion to strike a sham pleading] so as to give both sides an opportunity to offer evidence on the issue of whether the complaint alleged a false cause of action." *Id.* at 91 *citing Miller v. Nelms*, 966 So.2d 437, 440 (Fla. 2d DCA 2007). Indeed, as Judge Altenbernd observed, "Rule 1.150 contemplates that the trial judge will conduct an unusual evidentiary hearing . . . to determine whether factually the pleading is a sham." *Id.* at 592; *citing Meadows v. Edward*s, 82 So.2d 733 (Fla. 1955).

My client is entitled to hear your side of the story before your case-in-chief. Please let me know some dates/times that you are available so we can coordinate our calendars. Thanks.

Sincerely,
Zachary Z. Zermay, Esq.
Zermay Law
Telephone: Fla. (239) 699-3107; Cal. (310) 752-9728
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com


**From:** Mark Poe <mpoe@gawpoe.com>
**Sent:** Tuesday, September 20, 2022 12:55 PM

**To:** zach@zermaylaw.com
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Sure; I'll circle back to this after the hearing on my motions, thank

**From:** zach@zermaylaw.com <zach@zermaylaw.com>
**Sent:** Tuesday, September 20, 2022 6:30 AM
**To:** 'Mark Poe' <mpoe@gawpoe.com>
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Good morning Mark,

Can you give me some dates/times that you are free to sit for a deposition? Thanks.

Sincerely,
Zachary Z. Zermay, Esq.
Zermay Law
Telephone: Fla. (239) 699-3107; Cal. (310) 752-9728
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com

**From:** Wendy Dube <wendy.dube@keyscourts.net>
**Sent:** Tuesday, September 20, 2022 10:43 AM
**To:** Mark Poe <mpoe@gawpoe.com>; zach@zermaylaw.com
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Good morning:

Judge Garcia will be hearing this matter via Zoom. I may offer you October 7, 2022, via Zoom or it may be heard at the same time as the CMC on October 31, 2022, at 1:45 p.m. via Zoom. Please let me know.

*Regards,*

*Wendy Dube*
*Judicial Assistant to*
*Judge Luis M. Garcia*
*Sixteenth Judicial Circuit*
*88770 Overseas Highway*
*Plantation Key, FL 33070*
*305 852 7165*

**From:** Mark Poe <mpoe@gawpoe.com>
**Sent:** Saturday, September 17, 2022 3:28 AM
**To:** zach@zermaylaw.com; Wendy Dube <wendy.dube@keyscourts.net>
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Hi Ms. Dube,

I hesitated to respond for a moment, out of an expectation that you probably don't like to be involved in party bickering. But in order for you and Judge Garcia to have a full perspective, it seems like a response is appropriate.

As you know, this case had initially been assigned to Judge Koenig in Key West. After I filed my MTD and requested a hearing date, Judge Koenig approved the hearing by Zoom. Mr. Zermay then filed the attached lengthy screed as to why I should be forced to spend $2K of my money and three days of my time to personally attend a hearing in Key West (nearly the farthest possible place for me to travel while still being within the United States). As you will see in the attached email, in response to Mr. Zermay's harangue, Judge Koenig essentially said "nope, but if Mr. Zermay wants to attend in person, he's free to do so."

Having been already decided by Judge Koenig, I would think that the same result should obtain in Judge Garcia's courtroom. But if Judge Garcia would prefer to receive formal briefing as to Mr. Zermay's "insistence" that I travel from Hawaii to Florida to attend a hearing on a pleadings motion, I would be happy to submit my position.

Regards,
Mark

**From:** zach@zermaylaw.com <zach@zermaylaw.com>
**Sent:** Friday, September 16, 2022 6:22 AM
**To:** 'Mark Poe' <mpoe@gawpoe.com>; 'Wendy Dube' <wendy.dube@keyscourts.net>
**Subject:** RE: Jowers v. Poe; CMC/Motion Hearing date

Good afternoon,

Because these are evidentiary motions, I need to again insist on the hearings being held in person. As to the motion to strike the pleadings as a sham, Mr. Poe has in effect requested a mini-trial on the merits, so it goes way beyond his connections to Florida.

And discovery is still outstanding regarding issues in despite, so adjudication of those issues is premature at this juncture. It would be unfortunate to take the Court's time just to continue the hearing because of discovery issues.

Sincerely,
Zachary Z. Zermay, Esq.
Zermay Law
Telephone: Fla. (239) 699-3107: Cal. (310) 752-9728
Facsimile: (844) 894-6204
e-Mail: zach@zermaylaw.com

**From:** Mark Poe <mpoe@gawpoe.com>
**Sent:** Friday, September 16, 2022 11:00 AM
**To:** Wendy Dube <wendy.dube@keyscourts.net>
**Cc:** zach@zermaylaw.com
**Subject:** Re: Jowers v. Poe; CMC/Motion Hearing date

Hi all,

Honestly I can't imagine they would take 30 minutes combined given the overlap between the them. Strictly speaking, they are "evidentiary motions," but I don't expect to have any evidence beyond offering a couple of exhibits attached to

my declarations on file, and my own testimony regarding my lack of connection to Florida. I don't have a good sense as to what evidence Mr. Zermay might offer in opposition though.

Re: your second question, I'm just a lawyer, not in the military I'm afraid.

Regards,
Mark

On Sep 16, 2022, at 2:27 AM, Wendy Dube <wendy.dube@keyscourts.net> wrote:

Mr. Poe:

Refresh my recollection, how much time do you need for your motions to be heard?

Regards,

Wendy Dube
Judicial Assistant to
Judge Luis M. Garcia
Sixteenth Judicial Circuit
88770 Overseas Highway
Plantation Key, FL  33070
305 852 7165

**From:** Mark Poe <mpoe@gawpoe.com>
**Sent:** Thursday, September 15, 2022 5:52 PM
**To:** Wendy Dube <wendy.dube@keyscourts.net>
**Cc:** zach@zermaylaw.com
**Subject:** Jowers v. Poe; CMC/Motion Hearing date

Hi again Ms. Dube,

I saw the order setting a CMC for 10/31 and accepted the Zoom invite, but wanted to circle back on one issue:  I see in Section 5.c of Judge Garcia's "Agreed Civil Case Management/Scheduling Order" that motions challenging the pleadings must be heard within 60 days of filing, and that "[a]ny party unable to secure hearing time to comply herewith is directed to call the Court's Judicial Assistant immediately so that hearing time can be made available."

The Motion to Strike/Dismiss was filed on August 29, so by my calculation, under Judge Garcia's timing requirement, this needs to be heard by October 28.  There is likewise a pending motion for Section 57.105 sanctions, filed on September 10, that I would think could be heard simultaneously since it embraces the same issues.  Of course I wouldn't mind attending the CMC on the 31st if an exception is made to the 60-day rule (and we can get a later hearing date on those motions), but I'm confident that the hearing on those motions would obviate the need for a CMC in the first place.

It would be great if you can provide any guidance on this issue.  I am available for a motion hearing on any day that suits the Court (although given the time-zone issue, Judge Garcia's afternoon calendar would be preferable to the morning calendar).

Regards,
Mark

Mark Poe
Gaw | Poe LLP
www.gawpoe.com
Embarcadero 4, Suite 1400
San Francisco, CA 94111
(415) 766-7451